# UNITED STATES DISTRICT COURT
## District of Kansas
(Topeka Docket)

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      v.                        **CASE NO. 5:22-cr-40086-TC-RES**

**CECIL A. BROOKS (1),**
**LEMARK ROBERSON (2),**
**RICHARD ROBINSON (3),**
    a.k.a. "Bone,"

      **Defendants.**

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR PREINDICTMENT DELAY

Defendant Roberson has filed a Motion to Dismiss Due to Preindictment Delay, which his co-defendants have joined. (Doc. 147 at 1). Because the defendants have failed to meet their burden to establish actual prejudice and intentional tactical delay, they are not entitled to dismissal of the Indictment due to pre-indictment delay. The government, by and through undersigned counsel, respectfully requests that the Court deny the motion.

## I.    BACKGROUND

On November 10, 2022, a federal grand jury returned a three-count Indictment under seal charging all defendants with violating 18 U.S.C. § 241 by conspiring to hold young women, including Person 1 and Person 2, in a condition of involuntary sexual servitude (Count One); charging all defendants with violating 18 U.S.C. § 1584 by holding

Person 1 in a condition of involuntary servitude and forcing her to provide sexual services to Defendant Roberson (Count Two); and charging Defendants Brooks and Roberson with violating 18 U.S.C. § 1584 by holding Person 2 in a condition of involuntary servitude and forcing her to provide sexual services to adult men, including Brooks and Roberson (Count Three). (Doc. 1). This matter has not yet been set for trial.

Previously, in November 2001, the FBI received a report from a young woman who alleged that she had resided at Delavan apartments several years earlier; that Cecil Brooks used her in his drug operations; that Brooks took advantage of her drug addiction; and that Brooks had sexually assaulted her.[1] The government produced this report in discovery.

The FBI opened a criminal investigation into now-deceased co-Defendant Roger Golubski in January 2019. The investigation into Golubski led to the investigation of Defendants Brooks, Roberson, and Robinson.

Defendant Roberson filed the instant Motion to Dismiss Due to Preindictment Delay on April 11, 2025. (Doc. 147).

## II.  LEGAL STANDARD

"[S]tatutes of limitations . . . provide the primary guarantee[] against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (internal quotation marks omitted). Accordingly, "[t]he due process clause of the Fifth Amendment has only a limited role to play in protecting against oppressive delay" before indictment.

---

[1] The young woman is referred to as OV.F in the government's Rule 413 motion, in which the government described this 2001 report. (Doc. 102 at 21).

*United States v. Engstrom*, 965 F.2d 836, 838 (10th Cir. 1992) (internal quotation marks omitted); *see also United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir. 1988) ("The Due Process Clause warrants dismissal of indictments for preindictment delay only in exceptional circumstances."). The burden is on the defendant to meet a two-pronged test to establish that his due process rights have been violated by preindictment delay: he must show both (a) "actual prejudice resulting from preindictment delay," and (b) "that the delay was purposefully designed to gain tactical advantage or to harass." *Comosona*, 848 F.2d at 1113 (internal quotation marks omitted). The Tenth Circuit has emphasized that it is not the court's "function to 'second-guess' the government's timeline in bringing an indictment absent a showing that *both* factors—actual prejudice and the government's deliberate, tactical delay—are present." *United States v. Murphy*, 100 F.4th 1184, 1209 (10th Cir. 2024) (internal quotation marks omitted).

### III. ARGUMENT

For the reasons described below, the defendant—armed with unsupported allegations, internal inconsistencies, and no supporting caselaw—has failed to make either showing, and his motion should be denied.

#### A. The Defendant Has Not Shown Actual Prejudice

"Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice for the purposes of impermissible preindictment delay." *United States v. Johnson*, 120 F.3d 1107, 1110 (10th Cir. 1997) (internal quotation marks omitted). Rather, the "defendant

3

must be able to show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense." *Id.*

### i. *Speculation as to testimony of former prosecutor*

First, the defendant claims actual prejudice based on nothing more than mere speculation regarding the potential testimony of former prosecutor Terra Morehead. (Doc. 147 at 5-7). The defense points to an interview produced in discovery in which a witness discussed this former prosecutor. *Id.* The witness explained that Ms. Morehead "was the DA [District Attorney]"; that "I've been in trouble since I was 13 years old. . . . I know all of the DAs from juvenile on up"; that "[r]ight now I'm doing felony time . . . because of fucking cops . . . and . . . fucking Terra Morehead"; and that "right now I'm in here on a wrongful conviction." 1D60(2) at 1:14:17; 1:14:36; 2:31:39. The witness made numerous allegations about various individuals to whom they attributed blame for their felony time, including Ms. Morehead, and alleged that they saw Ms. Morehead purchase or receive cocaine from someone named Aaron and do cocaine. 1D60(2) at 1:11:57; 1:14:31.

The defense argues that this is relevant because Aaron was a drug associate of Defendant Cecil Brooks; the defense could have called Ms. Morehead, who was a state prosecutor and then a federal prosecutor, to testify; and the defense could have called the above-described witness to testify that they saw the prosecutor they blame for their conviction buy drugs from him. Although the witness did not place Ms. Morehead at Delavan apartments, the defense speculates that Ms. Morehead would have testified that she did not happen to see any involuntary sexual servitude at Delavan apartments, which "was a few miles from the courthouse where she worked at the time." (Doc. 147 at 6).

4

To call this rendering of Ms. Morehead's potential testimony speculative would be generous. More to the point, it is unclear how the testimony of Ms. Morehead and the above-described witness—which at best, could have established that someone allegedly knew someone who knew Defendant Brooks; worked a few miles from Delavan apartments; and did not know about sex trafficking there—would be relevant and admissible, let alone aid the defense. Moreover, to the government's knowledge, neither Ms. Morehead nor the witness who made such allegations are deceased or otherwise beyond the reach of a subpoena. Contrary to the defendant's suggestion (Doc. 147 at 6), the fact that this witness is now a former, rather than a current, prosecutor, does not render her testimony unavailable, lost, or otherwise impaired for pre-indictment-delay purposes. *Cf. United States v. Garcia*, 74 F.4th 1073, 1101-02 (10th Cir. 2023) (rejecting defense argument that death of two witnesses during 15-year preindictment delay caused actual prejudice and reasoning that defendant failed to show how the deceased witnesses would have provided exculpatory evidence not available through other means). There is no prejudice here.

### ii. *Speculation as to testimony of DEA agent*

Second, the defendant claims actual prejudice based on speculation regarding the potential testimony of whichever Drug Enforcement Administration (DEA) agent worked with his co-defendant, Defendant Brooks, when Brooks was an informant. (Doc. 147 at 7-8). In particular, the defendant argues that Defendant Brooks' DEA informant file no longer exists, that Brooks himself does not remember the agent he worked with, and that

the agent(s) "would have testified as to the steps they took to vet Mr. Brooks as an informant and would have testified regarding their familiarity with him." *Id.*

Here, too, the defendant fails to show "in what specific manner missing witnesses would have aided his defense." *United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir. 1983) (declining to dismiss indictment based on pre-indictment delay, rejecting claim of actual prejudice from missing witnesses where defendant failed to "demonstrate what particular facts could be proven by the witnesses" and how the testimony would be material and favorable to the defense). According to the DEA, Brooks was activated as a DEA informant in 1992 and deactivated in 1993; per DEA policy, his file was destroyed in 2018, 25 years after his deactivation.[2] There is no indication that whatever DEA agent worked with Defendant Brooks in 1992 and 1993 would offer any testimony that is relevant, let alone helpful, to the defense. *See Garcia*, 74 F.4th at 1102 (holding that defendant failed to show actual prejudice based on loss of identities of potential informant-witnesses where the defendant made merely "aspirational allegations" of what the informants would have said); *see also Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding that failure to preserve potentially useful evidence does not violate due process unless defendant can show bad faith). This is especially true where the defendant flatly admits, "[Defendant Brooks] was drug dealing" (Doc. 147 at 6), and where the charged conduct occurred

---

[2] Following defense counsel's motion (Doc. 147), the FBI followed up with the DEA, which confirmed the dates of Defendant Brooks' status as an informant and the destruction of his file. This information has been documented in a 302 and provided to defense counsel.

between 1996 and 1998.³  The defendant has failed to show actual prejudice.  On that basis, alone, his motion can be rejected.

### B. The Defendant Also Has Not Shown Intentional Tactical Delay

To meet the second prong, the defendant must show "that the delay was purposefully designed to gain tactical advantage or to harass."  *Comosona*, 848 F.2d at 1113 (internal quotation marks omitted).  The defendant suggests that a lesser standard of recklessness may apply, (Doc. 147 at 4-5, 8); it does not.  In support of this suggestion, the defendant cites (a) to *Lovasco*, which merely notes in a footnote that the government in that case wrote in its brief that recklessness could potentially violate the Due Process Clause, and that there was no evidence of recklessness, 431 U.S. at 795 n.17, and (b) to a 1979 Middle District of Tennessee case in which the court reasoned that, in citing the government's brief, the *Lovasco* Court "g[a]ve its apparent approval to the government's concession" as to recklessness, *United States v. Richburg*, 478 F. Supp. 535, 543 (M.D. Tenn. 1979).  But the Tenth Circuit recently has "declined an opportunity to expand the standard for pre-indictment delay to include a reckless disregard component."  *United*

---

³ Additionally, the defendant's argument that "[t]he Government knew what the DEA Agents knew," (Doc. 147 at 8), relies on the incorrect premise that DEA knowledge can or should be imputed to the FBI here.  *See, e.g.*, *United States v. Cano*, 934 F.3d 1002, 1024 (9th Cir. 2019) (refusing to impute knowledge of FBI and DEA to HSI investigators "notwithstanding the fact that the FBI and DEA, like the prosecuting U.S. Attorney's Office, were components of the Department of Justice"); *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir.), *cert. denied*, 145 S. Ct. 770 (2024) (rejecting defendant's argument that knowledge of the entirety of the Department of Defense is imputed to the component of the Department of Defense that participated in the investigation); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (prosecutor under no obligation to disclose FBI report prepared by agents uninvolved in the investigation or trial of the defendants); *see id.* ("We will not infer the prosecutors' knowledge simply because some other government agents knew about the report.").

*States v. Majeed*, No. 21-20060-JAR, 2023 WL 4826842, at *5 (D. Kan. July 27, 2023) (citing *Garcia*, 74 F.4th at 1097 (finding that the defendant failed "to make a specific argument that the Government here acted with 'reckless disregard'" and "we leave for another day the question of whether this circuit's test should be expanded")). Even if a reckless standard were to apply, moreover, the defense has not shown any evidence of recklessness.

With respect to the standard that does apply—whether the delay was purposefully designed to gain tactical advantage or to harass—the government did not delay purposefully here, and the defense has shown no evidence to the contrary. The defense argues that the government's motive to purposefully delay must "be inferred" from the fact that FBI agents documented victim interviews through written summaries rather than audio recordings. (Doc. 147 at 8-12). Far from evidence of bad faith, however, the FBI's procedure in this case of documenting sexual assault victim interviews through written summaries rather than recording equipment is both entirely appropriate and satisfies the government's discovery obligations, as evidenced by defense counsel's previewing of his cross-examination of both victims. (Doc. 147 at 9-11).

Nor do the defendant's other suggestions as to bad faith have any merit. A report from a single victim in 2001 about a single defendant does not trigger an obligation to indict. *See Lovasco*, 431 U.S. at 792-93 ("[C]ompelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act."). This is especially true where a law

enforcement officer was a member of the conspiracy and actively sought to cover up the existence of the conspiracy. And there has been no tactical advantage due to delay. In a complex case such as this one, with multiple defendants, numerous sexual assault victims, and a years-long conspiracy, the age of the case makes it more—not less—difficult to prosecute. (Doc. 102, Government's Motion for an Order Permitting Admission of Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) at 34) (explaining that there are "no eyewitnesses to the sexual assaults themselves, no DNA, no forensic evidence, no photographic or video evidence, no text messages or phone records, and no GPS or cell phone tracking evidence").[4] Thus, the defendant has failed to show intentional tactical delay.

---

[4] The defendant's additional suggestions as to the "context" for his bad-faith argument (Doc. 147 at 8), are confounding. The defendant repeatedly argues, for example, that "[t]he case is premised on the strange notion that multiple young women could be held" without people like their "family members" noticing, *id.* at 6, despite the Indictment stating that Defendant Brooks intentionally "selected young girls who were runaways, who were recently released from Beloit Juvenile Correctional Facility, and/or who came from broken homes." (Doc. 1 at p. 3.b). Likewise, the defendant suggests that the involuntary-servitude statute charged in this case, 18 U.S.C. § 1584, was not intended to apply to Black men who force young women and girls into sexual servitude in the modern era. (Doc. 147 at 1). The Tenth Circuit has soundly rejected this suggestion. In *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008), a modern-era § 1584 case, the Tenth Circuit emphasized that "[t]he words involuntary servitude [in the 13th Amendment] have a larger meaning than slavery. . . . The plain intention was to abolish slavery *of whatever name and form and all its badges and incidents*; to render impossible any state of bondage; to make labor free, by prohibiting that control by which the personal service of one man is disposed of or coerced for another's benefit, which is the essence of involuntary servitude," and that "sexual abuse [i]s *a badge and incident of servitude* which is distressingly common, not just historically, but for young women who find themselves in coercive circumstances today." 546 F.3d at 1262 (internal citations and quotation marks omitted).

## IV.  CONCLUSION

A defendant must show both actual prejudice and intentional tactical delay to establish that his due process rights have been violated by preindictment delay. The defendant has failed to show either. Accordingly, the Court should deny his Motion to Dismiss.


Respectfully submitted,

| | |
|---|---|
| DUSTON J. SLINKARD<br>ACTING UNITED STATES ATTORNEY | HARMEET DHILLON<br>Assistant Attorney General<br>Civil Rights Division |
| By: /s/ *Jabari B. Wamble*<br>Jabari B. Wamble<br>Assistant United States Attorney<br>District of Kansas<br>500 State Avenue, Suite 360<br>Kansas City, Kansas 66101<br>Ph: (913) 551-6730<br>Email: jabari.wamble@usdoj.gov<br>Ks. S. Ct. No. 22730 | By: /s/ *Tara Allison*<br>Tara Allison<br>Trial Attorney<br>Crim. Section, Civil Rights Div.<br>U.S. Department of Justice<br>150 M St. NE<br>Washington, DC 20002<br>Ph: (202) 598-7882<br>Email: tara.allison@usdoj.gov<br>NY Bar No. 5666029 |
| | By: /s/ *Briana M. Clark*<br>Briana M. Clark<br>Trial Attorney<br>Crim Section, Civil Rights Div.<br>U.S. Department of Justice<br>150 M St. NE<br>Washington, DC 20002<br>Ph: (202) 710-7320<br>Email: briana.clark@usdoj.gov<br>DC Bar No. 1735505 |

CERTIFICATE OF SERVICE

      I hereby certify that on May 23, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

      /s/ *Tara Allison*
      Tara Allison